**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **CHRISTA GAIL PIKE,** | ) | |
| | ) | **DEATH PENALTY CASE** |
| **Petitioner,** | ) | **No. 26-5864** |
| | ) | |
| **vs.** | ) | **Execution Scheduled for** |
| | ) | **Sept. 30, 2026, at 10:00 a.m. CDT** |
| **JORDAN CLARK,** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

# MOTION TO REMAND RULE 60(b) MOTION TO THE DISTRICT COURT

---

Comes now Movant Christa Gail Pike, by and through undersigned counsel, and respectfully moves this Court to remand her Rule 60(b)(6) Motion back to the district court because it is a not a successive habeas petition for the reasons outlined therein. This Court should remand the petition to the district court for plenary consideration.

On August 13, 2026, the State of Tennessee, for the first time, conceded that Ms. Pike had been the victim of child sexual abuse and rape: "The State does not dispute the terrible things that Ms. Pike suffered. I think everybody in this courtroom wishes that those things had never happened to Ms. Pike. I think we all wish that we were not here today and that she was not on death row…. And so it's certainly not the State's intention to try to minimize the suffering that Ms. Pike has experienced."

Vol. 1 at 82–83, *Tennessee v. Pike*, No. M2020-01156-SC-DPE-DD (Tenn. Aug. 13, 2026). This is the first time in the history of Ms. Pike's case that the state has conceded her history of child sexual abuse and rape. Indeed, the state called Ms. Pike a "pathological liar" in earlier proceedings in this case, Transcript of Evidence, Vol. 3 at 288–300, *Pike v. Tennessee*, No. 68280 (Tenn. Crim. App. Apr. 25, 2011), and argued that she had fabricated her accounts of rape and child sexual abuse.

The State's concession is diametrically opposed to the arguments it put forward in prior proceedings—arguments that directly contributed to the habeas court's decision to reject Ms. Pike's ineffective assistance of counsel claim because the state court decision was not unreasonable.

The concession directly contradicts the State's prior position and undermines the integrity of the judicial process because it erodes the foundation of the state post-conviction court's 2008 judgment rejecting her ineffective assistance of counsel claim, as well the opinions of the Tennessee Court of Criminal Appeals and Tennessee Supreme Court that relied upon those findings. It also vitiates the decision of the district court to deny her ineffective assistance of counsel challenge, the affirmance by this Court, and the decision by the U.S. Supreme Court to deny certiorari.

## **Background**

In rejecting Ms. Pike's ineffective assistance of counsel claim during post-

conviction proceedings, the court discredited Ms. Pike's history of repeated, severe child sexual abuse and rape after the state repeatedly called her a "pathological liar" and suggested that she was making up her history of sexual abuse and rape. The Tennessee Court of Criminal Appeals affirmed that denial. *Pike v. State*, No. E2009-00016-CCA-R3-PD, 2011 WL 1544207, at *1 (Tenn. Crim. App. Apr. 25, 2011). This court affirmed. *Pike v. Gross*, 936 F.3d 372, 374-75 (6th Cir. 2019).

On June 12, 2026, Ms. Pike filed a "Motion and Request to Appoint a Special Master Pursuant to Tenn. Sup. Ct. R. 12(4)(E)," raising facial and as applied challenges to Tennessee's lethal injection protocol. The Tennessee Supreme Court appointed a special master to conduct an evidentiary hearing and make findings of fact and conclusions of law on five specified issues. Order, *State v. Pike*, No. M2020-01156-SC-DPE-DD (Tenn. July 10, 2026).

Over two and a half days, a special master appointed by the Tennessee Supreme Court pursuant to Rule 12(4)(E) held an evidentiary hearing about the state's lethal injection protocols as applied to Ms. Pike. During the hearing, the Special Master heard testimony and received reports from Dr. Bethany Brand, an expert on the traumatic impact of sexual violence and adverse childhood experiences. Dr. Brand's testimony, report, and addenda established the following facts:

- Rape and sexual abuse pervaded Ms. Pike's childhood and adolescence. By the time she was seventeen, Ms. Pike had been raped by four different men

and sexually abused by another. These men eroded her sense of safety and irrevocably damaged her mental health.

- Ms. Pike was just a toddler when her paternal grandmother's boyfriend, Ernest Johnson, sexually assaulted her for the first time. His sexual abuse continued for years, escalating to oral rape when she was in preschool. He ensured Ms. Pike's silence by threatening to kill her beloved pets and her grandmother. He once thrust her into a chicken coop, locked the door, and left her huddled in the dark while spiders crawled over her skin and bit her.

- At age 11, Ms. Pike was in fifth grade at Carrboro Elementary School. On November 3, 1987, the school bus dropped Ms. Pike off near her mother's home. When Ms. Pike arrived, her mother was at work and the house was empty. As she was walking to the mailbox, a 37-year-old neighbor named Claude Davis grabbed her, held her down, and raped her. Davis was arrested and eventually pleaded "no contest" to "assault on a child under twelve years of age." He received a sentence of two years' imprisonment, which was suspended for a term of five years. After the rape, Ms. Pike was afraid and hypervigilant. "I thought he'd get me again," Ms. Pike told Dr. Brand.

- On January 14, 1994, Ms. Pike was walking to the store at night, alone, when she was grabbed by a stranger, thrown to the ground, and raped. She was 17 years old. Ms. Pike fought him as hard as she could. He tore her clothes off and forced himself on her so violently that he bruised and scraped her entire body. As he was raping her, Ms. Pike managed to escape, immediately went to a friend's house, who called the police and took her to a hospital, where the staff collected a rape kit and documented bruising on Ms. Pike's upper inner thigh and abrasions on her chest and knee. Weeping and hysterical, she told the police what happened, but the perpetrator was never identified or caught.

Importantly, the State did not contest this evidence during the hearing. After the testimony concluded, the State expressed sympathy and concern for Ms. Pike and stated unequivocally that it "does not dispute the terrible things that Ms. Pike suffered." As detailed below, this concession is a marked departure from the litigation position taken by the state during state post-conviction proceedings.

## Argument

**I. Federal Rule of Civil Procedure 60(b) is the appropriate procedural mechanism for the litigation of Ms. Pike's claim because she asserts a Defect in the Integrity of the Federal Habeas Proceeding. For that reason, it must be remanded to the District Court for proper consideration.**

Rule 60(b)(6) allows a party to seek relief "from a final judgment, order, or proceeding" and request reopening of a case for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). This Rule "vests power in courts … to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949); *see also Henness v. Bagley*, 766 F.3d 550, 554 (6th Cir. 2014) ("'The decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.'" (*quoting McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir.2013), cert. denied, 571 U.S. 1161 (2014)). Indeed, Rule 60(b)(6) "reflects and confirms the courts' own inherent and discretionary power, 'firmly established in English practice long before the foundation of our Republic,' to set aside a judgment whose enforcement would work inequity." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S.

211, 233-34 (1995) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)); *see also Tanner v. Yukins*, 776 F.3d 434, 438 (6th Cir. 2015); *Johnson v. Bell*, 605 F.3d 333, 336 (6th Cir. 2010) (stating that Rule 60(b) "is inherently equitable in nature," and "empowers district courts to revise judgments when necessary to ensure their integrity").

District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings when such motions "attack[ ] not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceeding." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). In this motion, Ms. Pike asks the Court to reopen and set aside its earlier judgment based on the State's now-abandoned litigation posture, a posture that tainted the integrity of the state court record that undergirds this Court's judgment.

Ms. Pike's Rule 60(b)(6) motion meets this jurisdictional prerequisite. Rather than attacking the final outcome of the case, Ms. Pike is calling into question the integrity of a process where the State of Tennessee can argue that evidence is unreliable in one proceeding and later maintain that it does not question the reliability of that same evidence. Such gamesmanship calls into question the integrity of the proceedings in Ms. Pike's habeas case.

In her state post-conviction petition, Ms. Pike alleged that her trial counsel was ineffective for failing to present extensive mitigating evidence, including

documented evidence of Ms. Pike's prior rapes. Under 28 U.S.C. § 2254(e)(1), federal courts must defer to state court adjudications on the merits. AEDPA's instructions are unequivocal:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e)(1). Moreover, under 28 U.S.C. § 2254(d), federal courts must not disturb state court rulings on the merits of claims brought in post-conviction proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Thus, AEDPA imposes barriers to federal court review of state court merits decisions in habeas proceedings that are mandatory and unequivocal. These barriers foreclose federal habeas review much like the procedural bars cited by the Supreme Court in *Gonzalez,* 545 U.S. at 532 n.4 (holding that a petitioner's 60(b) motion does not raise a new "claim" when he "merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar"). When the State calls into question the reliability of evidence in one proceeding and then endorses the reliability of that same evidence in a later proceeding, the federal court review of the habeas case is tainted.

### A. The District Court denied Ms. Pike's ineffective assistance of counsel claim because it was required to defer to the State post-conviction court's tainted findings under AEDPA.

Under AEDPA, the district court accorded a presumption of correctness to factual findings and conclusions of law tainted by specious arguments that the State of Tennessee has now abandoned. To understand the extent to which the state's litigation posture affected the post-conviction court's findings, it is necessary to briefly recount the evidence and argument presented during a hearing held by the state post-conviction court in 2007.

During that hearing, Ms. Pike presented evidence recounting the physical abuse, sexual abuse and rapes she endured throughout her childhood and adolescence. Dr. Jonathan Pincus testified in detail about the sexual violence Ms. Pike experienced and concluded that Ms. Pike had developed Post-Traumatic Stress Disorder as a result. The state vigorously contested Dr. Pincus' conclusions during its cross-examination, repeatedly calling Ms. Pike a "pathological liar." "[Ms. Pike] has lied from day one and she's been a pathological liar," counsel argued. "And yet you're relying on that pathological liar to render your opinion, isn't that true, Dr. Pincus?" The state then engaged in a lengthy and heated debate with Dr. Pincus about whether Ms. Pike was actually raped by Claude Davis when she was 11 years old.

The state also cast doubt on Ms. Pike's credibility by casting her—even with a death sentence—as a child: "You're aware, are you not, that any child can come forward and allege things and cause a warrant to be taken out, but there has to be some finding to conclude that it actually happened?" The State questioned whether she was penetrated, asking if there was "any other physical evidence that corroborated [Ms. Pike's] story." Finally, the State argued that Davis's guilty plea to a lesser crime indicated that no rape took place. In a lengthy colloquy, the State sought to convince Dr. Pincus and the court that the plea—and the light sentence imposed by the court—disproved the eleven-year-old's account of what happened.

In short, the State used every opportunity to cast doubt on Ms. Pike's experiences of sexual violence and abuse. In doing so, it invoked tropes that court actors have used for decades to discredit survivors of gender-based violence. *See* Sandra Babcock and Nathalie Greenfield, *Gender, Violence, and the Death Penalty*, 53 Cal. W. Int'l L.J. 327, 382-391 (2023) (discussing a range of tactics prosecutors use "to discredit women's accounts [of gender-based violence] and minimize the relevance of the violence they endured"); Suzanne St. George Coble, Emily Denne & Stacia N. Stolzenberg, *Blaming Children: How Rape Myths Manifest in Defense Attorneys' Questions to Children Testifying About Child Sexual Abuse*, 37 J. Interpersonal Violence 17–18 (2022) (providing an overview of rape myths and their invocation by defense attorneys in sexual assault cases involving children).

Compare, for example, the doctrine of judicial estoppel. The purpose of the doctrine is to "protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). By stating that it "did not dispute" Ms. Pike's history in open court, the State clearly conceded facts that it had previously disputed. This was no mere expression of sympathy. It was not an informal statement contained in a press release or an off-the-record assertion in the hallway of the courthouse. It was an on-the-record, formal statement that the State "does not dispute" the sexual violence that preceded Ms. Pike's arrest. It is difficult to be more explicit than "does not dispute."

Now the State concedes that Christa suffered horrendous sexual abuse as a child. This turnabout casts real doubt on the integrity of the federal courts' judgments dismissing her habeas petition.

**A. Ms. Pike's Case Presents Extraordinary Circumstances Warranting the Relief She Seeks.**

Because Ms. Pike's Rule 60(b)(6) motion was jurisdictionally proper, the question is whether she has shown "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). In evaluating extraordinariness, "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health*

*Servs. Acquisition Corp.*, 486 U.S. 847, 866 (1988). This fact-intensive inquiry also involves an assessment of the applicant's diligence, the probable merit of the underlying claims, the interest in finality, and other equitable considerations. *See* 8 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2857 (3d ed. 1998 and Supp. 2026); *Gonzalez*, 545 U.S. at 540 (Stevens, J., dissenting) (collecting relevant factors). Because the facts and circumstances of Ms. Pike's case are uniquely extraordinary, she is entitled to relief under Rule 60(b)(6) to prevent manifest injustice. *Klapprott v. United States*, 335 U.S. 601, 615 (1949); *Henness*, 766 F.3d at 554.

1. The Risk of Injustice to the Parties and the Merits of the Underlying Claim

The risk of injustice to Ms. Pike is obvious. She faces the prospect of execution after a death penalty trial and post-conviction proceedings that failed to give *any* weight to her documented childhood sexual abuse and rape. The risk of injustice to the State is inconsequential by comparison. Indeed, the State has an interest in the fair administration of justice. While the State certainly has an interest in finality of its judgments, that interest pales in comparison to the harm that would be occasioned by executing a survivor of sexual violence based on specious arguments and unreasonable legal reasoning.

There is also reason to believe that Ms. Pike would prevail if the Court remanded her 60(b) motion.

The post-conviction court's findings were clearly unreasonable. As an initial matter, the post-conviction court erroneously believed that Claude Davis was never convicted, a finding that rested on the state's misleading characterization of his prosecution during the evidentiary hearing—and ignored the court records that establish his guilt and corroborate Ms. Pike's account of sexual assault. Moreover, this Court's conclusion that Ms. Pike's history of child sexual abuse and rape was cumulative of other mitigating evidence contravenes binding Sixth Circuit precedent.

This Court has confirmed that a survivor's experiences of child sexual abuse are powerfully mitigating in a case involving a youthful offender like Ms. Pike. *See Foust v. Houk*, 655 F.3d 524, 543 & n.9 (6th Cir. 2011) (finding that trial counsel was ineffective for failing to present evidence of child sexual abuse in home and that such evidence was not cumulative). This Court has also clearly held that such evidence is not merely "cumulative" of other mitigating evidence presented in a capital case. *Id.* at 527. This is because child sexual abuse and rape are uniquely devastating. In *Kennedy v. Louisiana*, 554 U.S. 407 (2008), Justice Alito underscored that while "the rape of any victim inflicts great injury, "'[t]he immaturity and vulnerability of a child, both physically and psychologically, adds a devastating dimension to rape that is not present when an adult is raped.'" *Id.* at 468 (quoting Meister, Murdering Innocence: The Constitutionality of Capital Child Rape

Statutes, 45 Ariz. L. Rev. 197, 208-209 (2003)); *see also Wharton v. Chappell*, 765 F.3d 953 (9th Cir. 2014) (finding that unpresented evidence of childhood sexual abuse was different from presented childhood physical abuse and therefore not cumulative and that failure to find and present that evidence may constitute ineffective assistance).

This Court's decision in *Foust* is consistent with precedent from the Supreme Court. *See Wiggins*, 539 U.S. at 510 (finding ineffective assistance of counsel because counsel failed to present evidence that the defendant was repeatedly molested and raped by his foster father before the age of 16); *Sears v. Upton*, 561 U.S. 945 (2010) (remanding to determine *Strickland* prejudice because trial counsel portrayed defendant's home life as stable when defendant had been sexually abused).

2. <u>The Risk That Denial of Relief Will Produce Injustice in Other Cases</u>

There is a significant risk that denying Ms. Pike's motion will produce injustice in the cases of survivors of sexual violence who have long battled against the tendency of the legal system to minimize their suffering.

3. <u>Ms. Pike Has Exercised Diligence in Bringing this Claim</u>

The grounds for this petition emerged slightly more than one month ago, during a hearing in which the State of Tennessee made an unprecedented concession that Ms. Pike had no way of anticipating. The motion was timely filed in the court below.

4. <u>The Risk of Undermining the Public's Confidence in the Judicial Process</u>

It is inconceivable that in the 21st century, the criminal justice system is poised to execute a survivor of rape and child sexual abuse whose jury never had the opportunity to consider those facts in weighing the defendant's moral culpability. The public expects that courts will be fair and reasoned, and that death sentences will be carried out only after a process that guarantees that the person facing execution receives effective legal representation and fair consideration of all of the evidence weighing for and against the appropriateness of capital punishment. That did not happen here.

## CONCLUSION

The federal habeas courts were compelled to rely on the post-conviction court's demonstrably false findings of fact and the continuing consequences of a litigation position that has now been abandoned by the State at the eleventh hour. These demonstrably false findings came after the State of Tennessee argued the evidence was unreliable. Years later, the State of Tennessee endorsed the reliability of that same evidence. Rule 60(b) affords relief under these circumstances because the integrity of the process is called into question by these tactics. Remanding these habeas proceedings to the district court will prevent the irreversible injustice of the state executing a woman based upon incorrect facts and a litigation position that the State has not only abandoned, but which cannot be reconciled with modern research

on the impact of childhood sexual abuse. For all of the reasons stated above, Ms. Pike properly filed her 60(b) motion in the district court. This Court must remand there so it may reopen its judgment.

DATED this 29th day of September, 2026.

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

/s/ Stephen A. Ferrell
Stephen A. Ferrell
Assistant Federal Defender
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Phone: (865) 637-7979
Fax: (865) 637-7999
Stephen_Ferrell@fd.org

Counsel for Petitioner

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was filed and served via the Court's electronic filing system on the 29th day of September 2026.

/s/ Stephen A. Ferrell
Stephen A. Ferrell